Good morning. May it please the court, my name is Mike Farnell. I would like to reserve three minutes for rebuttal. Can I represent the appellants in this matter? Counsel, this is a request. In your argument, would you be specific as to the world of policy, how you put together your theory of coverage and duty to defend, and then tie it to the complaint that you filed? Counsel, that's what the insurance company was looking at, and if you could help us just walk through that as part of your argument, that would be very helpful. Certainly, Your Honor. Thank you. First, with respect to the duty to defend standard in Oregon, on December the 8th, 2016, just a couple of months ago, the Oregon Supreme Court descended the case to the West Hills Development. And in that case, the court reaffirmed longstanding Oregon law on the duty to defend. It is based upon the terms and conditions of the policy and the allegations of the complaint alone. All doubtful allegations were construed in favor of the duty to defend. Any ambiguities in the allegations were construed in favor of the duty to defend. The reason for that? Is there something new in that argument? I don't think there was anything new in that argument. Did you file a 20-H-A letter, did you? I'm sorry? Did you file a 20-H-A letter to cite that to us? We did not. We filed one instead on a Katie decision set by this court in 2016. But you invoked it today, so if you take it significant, it would be helpful if you give us citations. Certainly. The citation was simple. I'm happy to submit that. No, no, sir. You can do it later. All right. Just do an empty clerk. She has forms that you can fill out for both counsel and for the three of us. I'm happy to do that. To get to the point of Your Honor's question, the allegations in these complaints, and again, I'll harken back to this court's 2015 decision in Katie. Katie is a decision about a known property damage provision in the policy. That provision in the insurance policy speaks of whether the insured is aware of the property damage on which this liability is based prior to inception of the policy. In this court, in this case, Katie, the court determined that a construction contractor's knowledge of cracks in his cultured stone did not mean that he was aware of damage to the posts he was wrapping with cultured stone or the sheeting on those walls around the cultured stone. This court struck a distinction between types of property damage. If you are aware of one type of property damage, a known property damage provision does not mean you are aware of other kinds or types of property damage. The short answer to Your Honor's question is that in these complaints at Excerpt of Record 251, 518, and 510, those are the three different iterations of the complaint, there are allegations that although there may have been preexisting damage to walls, windows, sticking doors, again, we'll talk about what that damage means in a moment, but the short answer to the question in this case is there were new allegations of a different type of property damage that is damage to plumbing, damage to the roof, the roof tile, the roof line, and damage to the garage slab floor. Justice, what is your position on what was the, quote, occurrence, unquote, which triggered the potential liability for this policy? It seems to me there are three possibilities. One, apparently the trial court said it was the expansion of the soils. Another possibility might be the original foundation of design, which goes back quite a few years. And the third might be the negligent supervision of the health tiers. Is that the last one? Is that the one you're relying on? Yes, Your Honor. I'll thank you for asking that question because in my humble opinion, this is where the extra court is going to be off track with the analysis here. Consistent, again, with this court's decision a year and a half ago in Katy, this known property damage analysis can only happen within the context of the occurrence that gives rise to the liability. If you divorce the insurance coverage from the liability giving rise to the coverage question, we have untethered this analysis, and it doesn't have any logical meaning. So here, a construction contractor is only liable for mistaken work. This contractor, Meltebek, cannot be claimed to have been responsible for expansion of soils. His job was to show up and create a foundation system that would operate in spite of expansion of soils. So he thinks that you're responsible for the original foundation being inadequate. Yes, that's true, Your Honor. That liability was resolved in a prior settlement. Absolutely resolved. This case, this complaint, if you analyze those allegations at the experts' break, as I mentioned, speaks only to liability based upon the repair work. And it's important to mention that Oregon, like many jurisdictions, is a right-to-repair jurisdiction. We encourage our contractors to go back and fix their work. So this contractor tried a new system, a brand-new helical pier system. It was based upon that new work that created this complaint and this liability. The occurrence, Your Honor, cannot be expansive soils any more than the contractor in Cady was responsible for raining snow and ice on top of Mount Hood. Is it necessary for the helical solution to have been a reasonable attempt? I mean, do you need to show that it was reasonable for the contractor to assume that would fix the problem in order to break the chain of causation from the original foundation problems? I don't think that I do, Your Honor. The question is, was there new work that was an effort to fix a problem? A prior work had been resolved through a settlement. It's a question of insurance coverage, liability insurance coverage, not property coverage, but liability insurance coverage follows liability. And that coverage grant, again, going back to the policy point, which says we will pay those sums, but the insurer becomes legally obligated to pay because of property damage. So what if your new work was painting the walls purple? This contractor thought painting the walls purple would stop the foundation problems, stop this house from sinking. Would that have been new work that would break the chain of causation? The question, I think there, Your Honor, would be what a liability that would be, something that would, I'm not sure that I follow the question. I just don't understand your answer that it doesn't matter if anyone thought the helical solution would work. It seems like it's very necessary. The only logical way I can make sense of your argument is that there was reason to think this helical solution would work, and the new problem was that, surprisingly, it didn't work. If you don't have that, though, then I think we're back to this house was on bad soil with a bad foundation in the first place. Okay. I'll answer that in two parts. The first is that, yes, it was considered a reasonable repair job. There was an engineer or tier that recommended a helical pier system that was very different than a conventional foundation. We're talking about a system that is meant to drive pilings deep enough below expansive soils to get to the firm earth. There was an engineer who recommended this fix, and it was a specialty subcontractor working helical piers that came in to install that new foundation system. So to answer the question you had asked, yes, it was a reasonable repair job. And is it clear in the complaint that there was a solution that was expected to work that should have broken the chain of causation? Yes. What allegation in the complaint makes that clear? I know we have to take the allegation if it's true, but what allegation would you point to for that point? There are allegations of a counterintention of an engineer that recommended this helical pier system, also recommended by the specialty subcontractor, and then the substitute allegations in the complaint are that this contractor was negligent. Had it properly installed, we wouldn't be having this problem. I would hasten to mention that in the district court's opinion, the district court notes that it is undisputed that had the helical piers been properly installed, the damage would not have occurred. It would have worked. It was the pilings were not driven deep enough, and there were not a sufficient number of them. I would also note the second part of my answer to your honest question is that in Oregon, like most places, we are committed to a policy language selected by the insurance company, and this is a known property damage provision. This conversation sometimes tends to drift off into common law notions of known loss. That's a different animal, not adopted in Oregon. Known loss is this kind of vague and amorphous insurability public policy concept when an insurance company drafts purposefully language into a policy that says, you're covered unless you knew about the property damage, and that property damage continues, changes, or resumes into the policy period. One problem with this language, as the court may have noticed in canvassing the case law, is that it's very, very difficult to apply a given circumstance. In Katie, for example, if you're talking about culture stone, it was cracked. That didn't mean that that contract knew about later damage to posts and sheeting. Here. Can you be specific? What's the Oregon case that summarizes or embodies what you just said about the known property loss? There is one. That's the issue. When you say that Oregon is the right to repair and all of this, where do we find that in the Oregon law? ORS Chapter 701. Okay. That's the right to repair statute that most states have. We encourage our contractors to go back and fix. The top of a construction company, I'm sorry, I'm answering your question about which Oregon case provides these principles. The top of a construction case lays out the analytical construct for policy language. I'll take a head start that you've cited the case. I don't want to take your time up, but I just want to know where we go from there. Okay. So I'd like to take you back to the policy language. It says it applies to property damage. And the property damage is caused by an occurrence. Okay. And then occurrence is defined as occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. So how do you fit within that language? You've got the foundation for the original perceived problem, correct? And they tried to fix it with a helical pierce. Correct. Are you saying that the helical pierce is a new accident, and therefore it triggers the occurrence language? That's exactly it, Your Honor. You cannot have an accident without some kind of conduct of the person who has insured the existence of actual conditions. We don't insure that. We insure responses to actual conditions. Again, the original foundation system, those issues were resolved in a settlement agreement. And that was the first step. Correct. Okay. The foundation, this installed or wrong kind of foundation was first occurrence, and then the second occurrence, new occurrence, is the failure to properly install the helical pierce. Yes, Your Honor. I think the best way to illustrate that is that Oregon helical pierce was also sued. Obviously, this was his first time at the project. He made a mistake with respect to the inadequate, negligent installation of the helical pierce system. The allegations against the Melted Deck, the general contractor, were for vicarious liability for the work of its agent, the subcontractor, as well as the incident supervision. If that subcontractor committed an occurrence, he will, and the vicariously liable general contractor, I'm sure they have as well. So this is a function of insurance coverage for liability that has to be linked to liability. We don't look at expansive soils. It's not relevant to the insurance conversation. Can I just ask you, you are relying on the language of this coverage to be ambiguous. What precisely is your argument about the ambiguity? In Katie, this Court said that the property damage is an indefinite article, and it is such property damage that it has to continue, change, or resume. These are words of limitation. I don't believe it's necessarily ambiguous to say that when a contractor fully repairs the interior of a home and everything is pristine and put back together, we have a new occurrence, and then property damage follows that new occurrence. I don't know that it's necessarily ambiguous to say that's new or different property damage. What I am suggesting, however, Your Honor, is that that is at least one reasonable interpretation of this Court. And Katie said we're going to differentiate types. Well, if we can differentiate types, do we differentiate causes? Do we say fully repaired property is due for property? Do we say it's best just to believe this care, this insured warrant at the home is new and free of defects, you're good to go? Is that something that's a reasonable interpretation? The problem with this provision is that in a vacuum, it seems clear enough. In application, it's very difficult in different circumstances, as this Court, I think, noticed in Katie. Thank you. Thank you. This is the Court of Jonathan Anderson for Quanta and Kennedy. The Katie case is, well, evokes the notion of con, and in Katie, this Court addressed the language that's the issue here, which is continuation, resumption, or change. And it said that to claim the damage must be related to the new and damage, and then it's not short of answering the question that's present in this case, which is identified in photo five of the Katie decision. The difference in this case is there is no factual shortcoming. There is no evidentiary shortcoming. There is no material dispute like there was in Katie, which this Court identified and said, look, there's a dispute in here, and there's nothing in the record to resolve it. So we leave a racist question about whether this relation between known damage and claimed damage is causation. Here, there's zero doubt. There is no dispute that the known damage and the claimed damage is all caused by the heating soils on which this house is built. And so what we have is a record that shows that there was 10 years of contingent remediation, not just the peers. 10 years of different things trying to fix this problem of the house setting. And actually, the evidence is that the soil moves up and down, and this house is just suffering what they call symptoms of this problem. It's an occurrence. It seems to me that that's a reasonable interpretation. You could say the soil is shifting, this house keeps having problems, they've tried various things. One reasonable reading is this is just the same problem ongoing, but why isn't it also a reasonable reading that this engineering solution was expected to work, and I understand your clients agree that it was expected to work and that it didn't work, so that's a new problem. It's just that that's not part of the analysis of the language. If you look at the cases that we cited, we passed a wide net of cases that took exactly this language and tried to get the situation to take. So if you want to tie in any of the cases, maybe you can plug into one, but of reading your cases, I didn't see any case where there was a technical solution that everyone expected to work that didn't work. The Minnesota case. There's one Minnesota case that we cited. It's a decision from the Minnesota Court of Appeals, and it related to a brick archway. And in that case, the evidence was the fix that we thought was totally done, and everything was fixed, and later, during the policy period, we saw this reform in the bricks. And what that court said, and other courts have said the same thing, is the attempts at repair show that you have knowledge of the damage and that it doesn't matter under subjective belief, or everyone's subjective belief that it was fixed. It's the inquiry. The inquiry is, was there metal damage before the policy period? That question seems to interfere with yes. And is the claim of damage related to the metal damage? Our position is it is related, and when you look at the relation, it's causation. And we've cited courts that are persuasive authority only. There is no Oregon Supreme Court case on this, nor is there a Court of Appeals case that expressed the hold that it's causation that you look at. The other decisions that we cited, while they don't expressly say causation, it's clear from their holdings that's what they're looking at. For another scenario, I try to think of it hypothetical to illustrate how this provision worked in this case. This is it. But another scenario would be if a contractor damaged a window and water is coming in, and all of a sudden damages the floor, and you go and replace the floor and get a new policy and no fix to the window, and you get a new policy and then the floor is damaged again, you say, look, it's the same thing. The water is coming through. It's not the same thing. Because they didn't fix the window. They fixed the foundation. It's a continuation, change, or outcome of damage. Okay. So you don't, you know, for a duty to defend, they don't have to prove ultimate that they actually win. It has to be a plausible argument. And I'd like you to explain two things. One is suppose they had hired a new, they didn't do it themselves. They went out and they got somebody to come in and attempt to fix it, analyze it. And that person had to obviously know, be informed, I assume, that there was this problem, earlier attempt to fix. So that contractor has a policy against his negligence. Sort of. Would he be foreclosed under your reading because he was aware of the number? No, before the inception of the policy. So when the repair contractor comes in, he obviously knows there's a problem, and he's got insurance, and if he doesn't fix the windows, he doesn't get the rest of the liability. The policy he has. He doesn't. He has to, before he undertakes the job, he has to get a new policy. And so he gets a new policy because his other one is now collapsed or, you know, whatever. So he gets a policy, and before he undertakes the job, he's made aware of this condition. Are you saying, under your interpretation, now his new policy would not cover him? Under our interpretation, yes. Those are pretty unique facts, though. I mean, if the contractor had no insurance and then got fired. No, no. He did have insurance, but it lapsed. So, yeah. What you're saying was his old policy would have covered it. There was no gap in insurance. It's just a change in insurance companies and issued a new policy. So if he had, if he was knowledge of the demands before the second policy, then, yes, the second policy would not cover it. The first policy would if everything else that was involved in the process were satisfied. But that scenario didn't have it here. And really, that makes sense. Each policy has a specific period of time that it covers. And just because the second policy wouldn't cover it, like in this case, there were other policies at issue. It's a crease that didn't cover this damage because it melts back to no of the damage prior to the inception of those policies. But at some point, he becomes aware of this damage, and the policies after that don't cover it. But that is the way he doesn't have coverage to get coverage under the earlier policies. Okay, so address the issue I raised with counsel about the occurrence and accident. Why is that the wrong or an impossible reading that this was a new accident, and, therefore, it triggers the occurrence? So we're looking here at damage, and not just liability, because the issue is a known property damage provision. And with inspection duty to identify, plaintiff's own experts said the helical piers didn't cause damage. They just failed to stop the damage. The damage has been happening, and they couldn't stop it until they assumed. So was your counsel in the briefs that said it was undisputed, that if the helical piers had been installed correctly, they would have worked? Do you deny that that's undisputed here? I don't deny that. I just don't think that that's not relevant for the inquiry of the known loss provision, the liability piece, and whether this would have worked. It's just not relevant to this argument. Okay. Doesn't it become, then, at least ambiguous whether the new occurrence here was the helical piers not being installed correctly, and so not working? Well, it's before the occurrence defined in part by exposure to continuous conflict condition. So one reasonable reading is it was soil, and the other reasonable reading is the new condition, these helical piers were done wrong. It just, the helical piers simply failed to stop the original occurrence. The original occurrence continued to happen. And they didn't. Counsel, you're saying that there's no way to read the policy, that this was a new accident? I'm saying it's not reasonable. Even though it's a negligent failure to correct it, because if it had been done properly, it would have prevented the damage. So why isn't that a new accident? Well, our position is not hard. The inquiry is simpler than that. It's just what is the difference, is there a connection between the new damage and the clean damage, and the liability, and whether or not you thought you stopped it, or if there was other attempts. Because in this case, there were several other attempts, not just the helical piers. Those were all separate occurrences that you bring into the analysis. But why aren't they if they failed? Well, in other words, they were done improperly. Well, what I'm saying is it doesn't matter for this provision. This provision doesn't matter. Well, that's your conclusion. But you better prevail on it, because otherwise you had a duty to defend. I'm trying to find out why it's so clear that there was no possibility of a liability or coverage, or that it was okay to refuse keys. So you could have defended and reserved rights. The language that's issued here is resumptive and continuation for change. Those words are unambiguous. They have commonly accepted meanings. The courts, the citations that I have provided, numerous courts have said this is unambiguous. Let's go back to that. Because Westfield is the Minnesota case that you said is your case that shows that repairs don't break the chain of state. That's the one, yeah. That's the only one you've pointed to so far. So I've just been reviewing it, and it seems like in Westfield the court decided that the repairs were cosmetic, and that they haven't changed the structure. I don't think that's a case that is like what is being alleged here, which is that there's a repair that everyone expected to work. The court previously cited about ten cases. So is there another one that you can point to where there's a repair that's expected to work that didn't work? There is. There is a strange sight in my brief, in which there's a section in which we say, look, these courts have said that attempts at repairs don't actually help us. They help establish a knowledge of the damages. Some of those even involve foundations. And so I want to address to you this one really quick. And resumption, continuation, and change have commonly accepted the definitions. Resumption means to start again or recommencement. Continuation means to prolongation or resume after interruption. Change is to alter, transform, or change direction. In order to get around to this, in their complaint, the house is built on unstable soils. The soils are heating, causing symptoms to the house. And they define symptoms as all these structural problems, cracks, and doors misaligning, and windows sticking. And attempts were made to fix it. And those attempts were unsuccessful, and the symptoms recurred. They used the synonym recur to try to get around the language resumption, continuation, and change. Recurse means to occur again after an interval. It's synonymous with resumption, continuation. We can go through that. I want to get my question answered. Okay, so going back to the policy, it says insurance supplies for property damage. Property damage is caused by an occurrence. And then if you go over to occurrence, it says occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Would you just state that without going back to the exclusion or the qualification? Would you say it's reasonable to view the illegal appears as a new accident? Is that a point? Yes. If you have new occurrences, but our position is that doesn't matter. Okay. Counsel, you're not going to answer my question if you don't let me finish. I'm sorry. Okay. You can elaborate, but I want to get my logic. As illogical as it may seem, I'd like to go back and understand this longer. So if you get that far and you say, yes, it would be plausible to read this installation of appears as a new accident. Then do you come back to the prior to the policy period, no one sure knew that the property damage had occurred except for Carolina? Yes. Okay. And if that's true, explain that. How does that undercut the accident? How does that break the liability change? So our position is that all of this came as just a single cause, and that you know of damage from this cause before the policy period, and then you claim damage from the same cause during the policy period. So you say the cause is at the same occurrence during the policy period. I don't think it needs to be the same occurrence. It's just because you can have it. Why do you and Mr. Farnwell disagree on what is the quote occurrence of both these occurrences? The reason I say that is the cases that look at the case. There are several cases inside of it that say, look, these are potential repairs. You can see the same thing there. The potential repair is new, and the failure of that repair is a new occurrence. But that's not the inquiry. So the courts look at it. They just say, repairs do no damage before policy. Repairs do claim damage, and they're from the same cause. They say continuation, resumption of change without damage, and it's barred. Well, why shouldn't there be a difference between repairs that are like plastering over or painting again, and repairs that are a technical solution that people expect it to work? Isn't there a logical difference between those? Not under this policy language. And, again, I'm invited to look at these three sites. Some of them actually involve potential repairs to foundations. Some of them regard repairs picking trenches and trying to redirect water away. Some of them relate to stucco siding. And there are technical repairs in these cases, and they still say, they don't actually even discuss this distinction between technical repairs and patient repairs. They just say, look, you continue to repair. You knew about damage. This damage over here is a continuation, resumption, or change of that original condition. It's not covered. And I would say in those cases, you could easily say there's more than one occurrence. The failure to repair can pre-arise liability, but that doesn't matter. It's not part of the inquiry. If you have a case where the parties agree that the solution should have worked but didn't, I would love for you to point to it because I haven't found one yet. Okay. We'll give you three minutes for a vote. The weakness, fallacy, and insurer's position is emphatically demonstrated by Council's response to your question about a different repair contractor. Construction defects, claims, do not happen immediately following the work. You need the insurance that covers you for a period of time after you do the work. Obviously, particularly in water intrusion cases, it's delayed damage. Nobody knows this immediately. Things have to happen before people notice that there are problems. So for an insurance policy to be enforced on the day that that repair contractor comes to a job site, it's informed that we have an expanse of soils of problems we have identified. We think, based upon an engineer's recommendation, that helical gears can work. Will you do it? Yes, I've done this many times. I think it can work. You undertake that work. Three months later, your policy expires and you buy the new one. Nobody gets sued within days following the work. It just doesn't have the liability time. Is tail coverage a prior policy that can be? No, it depends on when the property damage commences. Tail coverage is usually something that, again, there is a commissioners, directors, officers coverage, that sort of thing. It's something that you can purchase. In a concurrence-based policy like these general liability policies, the trigger is property damage. It has to be property damage that occurs during the policy period caused by an occurrence. So if, in a year's time, the house begins to move and a claim is made against that new repair contractor, he needs, it needs the insurance in place at the time of the property damage. Correct the counsel's argument. When, in three months, this repair contractor purchased the new policy, he would be uncovered. That would leave our repair contractors completely uncovered. This is something that we argue at length. I tried to prevail upon the trial judge to recognize that this is a real, real problem. And what the court's answer was, that's just not this fact. That's not this case. Well, you know, it is. And counsel confirmed that this is a very real problem. So when we have all these repair contractors coming to a job site, being told by a property owner, I've got these conditions. It's a problem. My building is leaking like a sieve. I need help. Our repair contractor is essentially uncovered. That cannot be the rule, particularly in a right to secure jurisdiction where our legislature has said, we want you folks to repair your own work. We don't want all this litigation. We want to streamline the process and make this a better, happier place. All right. You're paraphrasing the, it sounds like a court opinion. What about right to repair? Yes. Because you're saying the legislature. The legislature in Chapter 701. Again, many states around the country have this right to repair. But you're saying all of this, I don't care about other states. I want to know. So it's all within the four corners of the Oregon statute. Are you adverting to legislative history or something that's in the statement of the reasons for the law? I am referring to Chapter 701 of the Oregon Revised Code. And that provides a program by which a certain number of days, their operating owners are obligated to provide notice to a contractor when they believe they have mistakenly conducted work. That repair contractor is then given an opportunity to come to the job site in a period of time in which to elect whether to repair. That contractor, when he comes back at the job site to perform new work and risk a new occurrence. And, again, I'm sensitive to your Honor's question. It has to be a meaningful repair job intended to fix the problem. When that happens, you need to be covered. In this particular statutory scheme, very detailed, spelled out, you come back, you need to be covered for that, that new work, that new occurrence. You need to be covered for it. Thank you, counsel. Thank you. Both sides, very helpful arguments. Thank you. Thank you. Thank you.
judges: O'scannlain, Fisher, Friedland